# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN SCIORTINO, | Civil Action No.: 2:23-cv-1869 |
| | Civil Action – Medical Professional Liability Action |
| Plaintiff, | |
| v. | |
| UNITED STATES OF AMERICA, THOMAS CACCIARELLI, M.D.; | **COMPLAINT** |
| Defendants. | |

Filed on Behalf of the Plaintiff,
Steven Sciortino

Counsel of Record for this Party:

Matthew J. Scanlon, Esq.
PA I.D. #307209

Timothy Grant Wojton, Esq.
PA I.D. #307894

Scanlon & Wojton, LLC
304 Ross Street, 2nd Floor
Pittsburgh, PA 15219
412-918-1241 (phone)
412-235-7275 (fax)

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

STEVEN SCIORTINO,                                   Civil Action No.: 2:05-mc-2025

                                                                                          Civil Action – Medical Professional
                                                                                          Liability Action

          Plaintiff,

v.

UNITED STATES OF AMERICA,
THOMAS CACCIARELLI, M.D.;

          Defendants.

## COMPLAINT

AND NOW, comes the Plaintiff, Steven Sciortino, by and through his counsel, Matthew J. Scanlon, Esq., Timothy Grant Wojton, Esq., and Scanlon & Wojton, LLC, and files the within Complaint, and in support thereof, avers as follows:

## PARTIES

1. Steven Sciortino is an adult individual, Veteran of the United States Naval Forces, who is currently residing at 450 Halloran Street, SE, Palm Bay, Florida 32909.

2. Plaintiff received a liver transplant at the VA Medical Center in Pittsburgh, PA.

3. Defendant United States of America (hereinafter referred to as the "United States") maintains the United States Department of Veterans Affairs and its divisions and subdivisions.

4. The Unites States Department of Veterans Affairs was established by Congress, in part, to administer a government healthcare system for military veterans of the United States of America and includes within its purview administration of the VA Healthcare System.

5. The VA Healthcare System provides health care to veterans including medical, nursing, surgical and rehabilitation care for eligible veterans who served in the Armed Forces of the United States.

6. The Pittsburgh VA Healthcare System is a division of the U.S. Department of Veterans Affairs, and provides healthcare to veterans at facilities, including but not limited to the VAMC located at 4100 Allequippa Street, 15240.

7. Defendant, Thomas Cacciarelli, M.D., is a surgeon employed by the United States of America, Department of Veterans Affairs, who provides healthcare to veterans, specifically, performing liver and kidney transplants, including for the Plaintiff, Steven Sciortino, at the Pittsburgh VAMC.

8. Plaintiff is asserting a medical negligence claim against Defendant United States of America and Dr. Thomas Cacciarelli.

9. Dr. Thomas Cacciarelli is, upon information and belief, at all times relevant hereto, a Federal government employee who retained the highest authority of a medical treatment provider involved with the care of Plaintiff, Steven Sciortino, during his medical treatment courses in Pittsburgh, PA.

10. At all times relevant hereto, Defendant United States was acting by and through its duly authorized agents, servants and/or employees, ostensible or otherwise, who were then and there acting within the course and scope of their employment or agency, including but not limited to Dr. Thomas Cacciarelli and resident anesthesiologist, Dr. Catalin Ezaru.

11. The Pittsburgh VAMC, (hereinafter referred to as "VA"), is the main campus in the Pittsburgh VA Healthcare System, and it operates as a healthcare provider, offering

primary care and specialty health services, including transplant surgery, cardiology, neurology, orthopedics, pulmonary medicine, and internal medicine.

12. At all times relevant hereto, the Pittsburgh VAMC was organized and established, and operated and conducted business as, a division of the U.S. Department of Veterans Affairs, and indeed, it is owned, controlled, operated, and maintained by the U.S. Department of Veterans Affairs, an agency of the United States of America.

13. As such, the Pittsburgh VAMC is organized to provide healthcare to veterans utilizing licensed healthcare professionals, such as Dr. Thomas Cacciarelli and Dr. Catalin Ezaru.

14. At all times material hereto, the medical care providers working within liver transplant team captained by Dr. Thomas Cacciarelli, including Dr. Catalin Ezaru, held themselves out as agents, servants and/or employees of the U.S. Department of Veterans Affairs.

15. On or about January 4, 2023, the Plaintiff served the Office of General Counsel of the Department of Veterans Affairs in Washington, D.C., an executed Standard Form 95, providing notice to the United States Government of claims on his behalf. *See copy of the Standard Form 95 submission, attached hereto at Exhibit "A".*

16. By letter dated February 10, 2023, Lisa Hosman-Davis, a Supervisory Paralegal, working within the Office of Torts Law Group of the U.S. Dept. of Veterans Affairs in Pittsburgh, PA, replied with a letter indicating that the U.S. Department of Veterans Affairs received Mr. Sciortino's tort claim on January 04, 2023, and, that Attorney Sara Aull had been assigned to research the claim. *See copy of letter authored by Lisa Hosman-Davis, attached hereto as Exhibit "B".*

17. On or about May 10, 2023, administrative counsel for the Plaintiff at the time received a letter authored by Kristen Nelson, Deputy Chief Counsel of the Torts Law Group in

Washington, D.C., denying the claim of Plaintiff, Steven Sciortino. *See copy of denial letter authored by Kristen Nelson, attached hereto as Exhibit "C".*

18. The May 10, 2023 letter from Attorney Nelson advised the Plaintiff that he has six (6) months from May 10, 2023, i.e., until November 10, 2023, to file a formal lawsuit in Federal District Court.

## JURISDICTION AND VENUE

19. This action is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671.

20. Over six (6) months have passed since the United States Department of Veterans' Affairs acknowledged receipt of the Plaintiff's original Form-95 submission.

21. By letter dated May 10, 2023, the Defendant United States issued its final and most recent denial of the Plaintiff's claim, establishing a November 10, 2023 deadline to file the within Complaint.

22. Venue is proper within this district under 28 U.S.C. §1402(b) as the negligent acts complained of occurred in the Western District of Pennsylvania, specifically, within the walls of the Pittsburgh VAMC.

23. The above-captioned matter is being brought against the United States of America pursuant to 28 U.S.C. § 2671, *et seq.* (Federal Tort Claims Act), and 28 U.S.C. §1346(b)(1) for money damages, compensation for personal injuries that were caused by the negligence and wrongful acts and omissions of the agents, servants and employees of the United States Government while acting within the course and scope of their offices and employment, under circumstances where the United States, if a private person, would be liable to the Plaintiff in accord with the laws of the Commonwealth of Pennsylvania.

## FACTUAL NARRATIVE

24. The Plaintiff, Steven Sciortino, is a U.S. Navy veteran who received a liver transplant on or about January 5, 2021 at the Pittsburgh VAMC as very few VA locations nationwide perform transplant surgery.

25. Plaintiff, Steven Sciortino, remained in Pittsburgh for approximately two (2) weeks following the surgery for post-surgical care.

26. Prior to returning to Florida where he resides, Plaintiff, Steven Sciortino, was informed by Defendant, Dr. Thomas Cacciarelli, that a foreign body had been left inside Plaintiff's body during surgery and had not been removed.

27. Defendant, Dr. Thomas Cacciarelli, failed to perform any follow-up diagnostic testing to confirm the presence of the foreign body, or, attempt to treat Plaintiff with removal of the foreign body.

28. Thereafter, Plaintiff, Steven Sciortino, returned home to Florida.

29. One day, Plaintiff, Steven Sciortino, bent over and felt a sharp pain, which he assumed was ordinary musculature pain.

30. However, to be safe, Plaintiff, Steven Sciortino, decided to pursue treatment of the sharp rib-area pain at the VA clinic in Viera VA Clinic in Melbourne, FL.

31. One of the treatment providers at the Viera VA Clinic decided it best to have Plaintiff, Steven Sciortino, treated at the Orlando, FL VA for an MRI.

32. Plaintiff's treatment providers in Orlando, FL were in communication with the treatment team led by Dr. Thomas Cacciarelli in Pittsburgh.

33. Dr. Thomas Cacciarelli and his support staff, including Dr. Emmanual, Dr. Khann, Dr. Petty, Dr. Schott and Lisa Meinke, PA-C, preferred the Orlando, FL VA treaters perform

a CT scan instead of an MRI. At all relevant times hereto, all of the named providers in this paragraph were acutely aware of a foreign body being left inside Mr. Sciortino's body.

34. Plaintiff, after having the imaging performed in Florida, received a telephone call from his treatment providers in Florida inquiring as to when he (Plaintiff, Steven Sciortino) had received a pacemaker.

35. Plaintiff, Steven Sciortino, clarified with the treater that he had never had a pacemaker inserted in his body.

36. Further testing, the CT scan, indeed revealed that a foreign body, likely a metal electrode, had remained lodged in Plaintiff's body, and thus, an MRI could not be conducted to determine the extent of rib pain or a possible, suspected hernia, Mr. Sciortino was suffering from.

37. At a follow-up appointment with Dr. Cacciarelli in Pittsburgh, Mr. Sciortino was asked by Dr. Cacciarelli if the airport metal detectors had sounded their alarms when Mr. Sciortino passed through.

38. Mr. Sciortino indicated that they had not. Dr. Cacciarelli thus informed Plaintiff, "he should not worry about it then", referring to the presence of the foreign body left lodged in the person of Plaintiff, Steven Sciortino.

39. The medical records from the transplant surgery in Pittsburgh; a surgery which Dr. Thomas Cacciarelli oversaw, including the treatment rendered to Plaintiff by other providers like Dr. Catalin Ezaru, the anesthesiologist during the liver transplant surgery, indicate that Dr. Thomas Cacciarelli knew that a foreign body, termed a "metal electrode" was left inside the body of Plaintiff after surgery.

40. It appears that Mr. Sciortino's lung has retained the metal foreign body, and he has since suffered severe chest pain, shortness of breath, lightheadedness, anxiety, depression, and economic losses as a result of the foreign body being left inside the person/lung of Plaintiff, Steven Sciortino.

41. Dr. Thomas Cacciarelli, as the transplant surgeon and the lead authority figure in the operating room during the transplant surgery for Plaintiff, Steven Sciortino, knew and appreciated that part of the care and treatment Mr. Sciortino would receive during his liver transplant was anesthesia.

42. Despite this knowledge and appreciation, Dr. Thomas Cacciarelli failed to appropriately and properly oversee and ensure that Dr. Catalin Ezaru, during the anesthesia care beginning on January 5, 2021 at 3:31 p.m., did not leave any foreign body or item behind prior to the commencement of the actual liver transplant.

43. Alarmingly, at the end of the procedure, an intraoperative x-ray was performed for a possible item retention. There were no comments on the intraoperative x-ray discussing or finding a foreign body retention.

44. It was not until several hours had passed after the surgery, on January 6, 2021, that a postoperative chest x-ray appeared to a "short line projected over the cavoatrial junction adjacent to the Swan-Ganz catheter of uncertain etiology."

45. Dr. Kate Petty, concerned about the potential foreign body, ordered a repeat chest x-ray, which found: "linear opacity projected in the left hilum **likely represents an embolized foreign body of uncertain etiology**, previously seen at the cavoatrial junction and prior examination performed earlier today."

46. Dr. Christopher Schott, the ICU attending physician, noted on January 6, 2021, that "this foreign body appeared to move from the right atrium into the pulmonary vasculature. We repeated the x-ray removing any external leads that may have caused this air, **and it still appeared**."

47. Despite the knowledge of the medical professionals working as employees of the Pittsburgh VA, and under the ultimate direction and control of Dr. Thomas Cacciarelli, nothing was done by any Pittsburgh VAMC medical provider treating Plaintiff, Steven Sciortino, to remedy the issues the retained foreign body began to cause, which is careless, negligent conduct at the minimum.

48. Shortly after the liver transplant surgery, Plaintiff, Steven Sciortino, began experiencing chest pain and intermittent shortness of breath, which Plaintiff contends is directly related to the retained foreign body from the liver transplant surgery.

49. Dr. Thomas Cacciarelli, the liver transplant surgeon for Mr. Sciortino with the highest operating room authority, is liable for the negligence of Dr. Catalin Ezaru in leaving a foreign body, here, a piece of the central line guidewire, in the person of Plaintiff, Steven Sciortino.

50. It was negligent for Dr. Catalin Ezaru, the anesthesiologist for the liver transplant surgery of Plaintiff, Steven Sciortino, when he failed to follow the proper protocol for central venous catheter placement and removal, for which Dr. Thomas Cacciarelli and the Pittsburgh VAMC are liable as overseers and highest authority personnel in the surgical area during the transplant surgery of Plaintiff, Steven Sciortino.

51. It was negligent for Dr. Catalin Ezaru, the anesthesiologist for the liver transplant surgery of Plaintiff, Steven Sciortino, when he failed to properly document whether the entire

guideline wire had been removed from Plaintiff's vascular system and make verification thereof, in accordance with established procedures and protocol for treating anesthesiologists, for which Dr. Thomas Cacciarelli and the Pittsburgh VAMC are liable.

52. Dr. Catalin Ezaru was negligent in failing to properly create and abide by a checklist documenting Steven Sciortino's central line cannulation, which is negligent of the VAMC and Dr. Thomas Cacciarelli, as neither party required such a checklist, in violation of established treatment procedures and protocols for anesthesia treatment.

53. The consent to surgery for the anesthesia that was obtained by the VAMC and Dr. Thomas Cacciarelli on or about January 5, 2021, did not include any discussion of a risk that a guidewire would be left inside a vessel, or, any portion of Steven Sciortino's body, for that matter, which was negligent of Dr. Ezaru and Dr. Cacciarelli, as they are required to discuss all risks of this surgery with Plaintiff.

54. The negligence which occurred during the treatment course of Steven Sciortino, the Plaintiff herein, while a patient of the Pittsburgh VAMC and Dr. Thomas Cacciarelli and Dr. Catalin Ezaru, was avoidable and preventable.

55. Had proper care been taken by Dr. Cacciarelli and Dr. Ezaru, and the standards of care adhered to, as discussed above, the guidewire would have been removed and Steven Sciortino, the Plaintiff herein, would not have suffered from prolonged postoperative intubation, unnecessary procedures, including bronchoscopy, additional radiation exposure, from multiple chest x-rays and CT scans, any of the current physical symptoms and potential unknown long-term exposure from the retention of the foreign body.

### COUNT I – Professional Medical Negligence
*Steven Sciortino v. United States of America and Dr. Thomas Cacciarelli*

56. The foregoing paragraphs are incorporated herein as though fully set forth below.

57. At all times relevant hereto, the medical and healthcare agents, servants and employees of the Pittsburgh VAMC who treated the Plaintiff, all of whom were acting within the course and scope of their agency or employment, owed to the Plaintiff a duty to act in a manner consistent with the professional standards of care applicable to their respective specialties.

58. At all times material hereto, Dr. Thomas Cacciarelli, owed a duty to the Plaintiff to exercise the skill and care of a reasonably prudent physician practicing in transplant surgery.

59. At all times material hereto, Dr. Catalin Ezaru owed a duty to the Plaintiff to exercise the skill and care of reasonably prudent physician practicing anesthesia.

60. The Defendant, United States of America, along with Pittsburgh VAMC, and their respective agents, ostensible agents, servants, and employees, all of whom were acting within the course and scope of their agency or employment, deviated from good and acceptable medical standards, outlined with great specificity above.

61. As a direct and proximate result of the negligence and carelessness described hereinabove, the Plaintiff has suffered great chest pain, shortness of breath, prolonged postoperative intubation, unnecessary procedures, including bronchoscopy, additional radiation exposure, from multiple chest x-rays and CT scans, any of the current physical symptoms and potential unknown long-term exposure from the retention of the foreign body

62. As a further direct and proximate result of the conduct of Defendant United States and its agents, servants and/or employees, Plaintiff has been forced to endure great pain,

discomfort, suffering, burden, and inconvenience since the date of the surgery on January 5, 2021.

63. As a further direct and proximate result of the conduct of Defendant United States and its agents, servants and/or employees, Decedent suffered a loss of such sums as he would have earned in the future and his earning capacity was destroyed as of the date of his surgery.

WHEREFORE, Plaintiff claims all damages recoverable under the applicable laws of this Commonwealth against the Defendant in a sum in excess of the threshold amount for a board of arbitrators in this jurisdiction, and any and all additional sums deemed lawful and appropriate by this Honorable Court.

Respectfully submitted,

/s/ *Matthew J. Scanlon, Esq.*
Matthew J. Scanlon, Esq.